ROBERT I. MAY, Appellee, v. EDWARD TIGHE, Appellant.

**BROKERS: Compliance with Contract as Condition to Commission.**
1 It is elementary that a real estate broker must meet and comply with the terms of his contract before his commission is earned.

PRINCIPLE APPLIED: Plaintiff, a real estate agent, as a condition to the commission of $1.00 per acre, agreed to procure a purchaser for defendant's land at $30 per acre cash. He attempted to sell or trade to one B, who was originally his own client, and who had been contemplating buying the land, or trading therefor, before plaintiff secured his contract for a commission. His effort to sell or trade to B was not successful because B was not willing to trade or buy on a basis of $30 per acre. Plaintiff's contract gave defendant the right to have other agents. Later, B negotiated directly with other agents of the defendant and finally took defendant's land on the basis of $27.25 per acre. Conceding, without deciding, that plaintiff's contract could have application to B, who was already a contemplated purchaser, *held*, plaintiff had not met the terms of his contract and had earned no commission.

**BROKERS:** Contract for Commission—Construction—Interlocking
2 **Clauses.** Every provision of a contract permeates and becomes
a part of every other provision of a contract unless a contrary
intent is clearly indicated, and the construction of a contract
must be such as to carry out the evident intent of all of these
interlocking clauses of the contract.

PRINCIPLE APPLIED: (Facts additional to No. 1.) The
contract contained this clause: ''If I (defendant) sell to any
person who becomes interested through the efforts of the said
May (plaintiff), then I agree to pay the same commission to him
as above stipulated.'' *Held*, this clause could not be construed
as standing alone, but must be construed as a part of the con-
tract as an entirety; and, in view of the fact that B was already
a contemplated purchaser of the property before plaintiff secured
his contract, the above clause did not release plaintiff from his
obligation to find a purchaser at $30 per acre.

*Appeal from Pottawattamie District Court.—*HON. THOMAS
ARTHUR, Judge.

FRIDAY, APRIL 9, 1915.

REHEARING DENIED TUESDAY, OCTOBER 5, 1915.

ACTION by a real estate agent to recover a commission for
the sale of land. The defendants are husband and wife.
The action is predicated upon a written contract executed by
the husband alone. It is averred that the contract was exe-
cuted by the husband as agent for the wife and that she ratified
the same. At the close of the evidence, the trial court directed
a verdict for the plaintiff against Edward Tighe and ordered
a dismissal as to the defendant Margaret. From the judgment
against him the defendant has appealed. From the order of
dismissal as against Margaret, the plaintiff has appealed.—
*Affirmed* on plaintiff's appeal, *reversed* on defendant's appeal.

*Tinley, Mitchell & Pryor, M. F. Harrington,* and *J. J.
Harrington,* for appellant.

*I. N. Flickinger, Genung & Genung,* and *Clifford Powell,*
for appellee.

EVANS, J.—The contract sued on is as follows:

"In consideration of the promise of R. May to undertake to procure a purchaser for the below described real estate, at the price of thirty ($30.00) dollars per acre cash to be cash, and balance on ———— years time at ———— per cent interest, semi-annually, I agree to pay as commission to said May on the production of a purchaser, who purchases the land on said terms, the sum of one ($1.00) dollar per acre. The privilege herein extends until December 31st, 1912.

"If I sell to any person who becomes interested through the efforts of said May then I agree to pay same commission to him as above stipulated. This agreement shall not preclude me from having other agents. Land covered by this agreement: Is known as Tighe Ranch containing 3,120 acres; located about 12 miles northeast of Page, Holt county, Nebraska.

"I, R. May, accept the terms above set forth and in consideration thereof promise to use my best endeavors to procure a purchaser for said land, within the time stipulated. All expenses in the premises, to procure a purchaser, including advertising, I will bear.

"Dated August 28th, 1912.

"Agent, ROBT. T. MAY,

"Owner, EDWARD TIGHE."

On and prior to the date of this contract, the plaintiff was a real estate agent resident in Iowa. He was associated with another agent, Jackson. He had an agency for the sale of a tract of 519 acres in Pottawattamie county for Richard Bada. Through another real estate agent, Elam Ord, he learned of a Nebraska ranch of 3,120 acres located near O'Neill, Nebraska, and known in this record as the Tighe Ranch. This ranch had been on the market for some time

under the agency of Harrington, of O'Neill. Harrington associated Ord with him in the attempt to find a purchaser. In pursuance of May's talk with Ord, he and Jackson arranged with their customer, Bada, to go with them to Nebraska to see the ranch. This was on August 28, 1912. The ranch was examined by Bada and a tentative trade proposed whereby Bada's land should be put in at $100 per acre, and the Tighe land at $30 per acre. Tighe and his son proceeded at once to Pottawattamie county to see the Bada land. At the town of Page, where they took the train, the contract above set forth was entered into. This was after an examination of the ranch by Bada and after the tentative negotiations already referred to. After seeing the Bada land, Tighe expressed a willingness to trade upon the proposed terms. Bada, however, was not willing to enter into a contract. He contended that the price was too high on the Tighe ranch. He also wanted to make another examination thereof, which he later did. He finally, refused to accept the Tighe Ranch at the price. On the 7th of September, he caused a letter to be written to Tighe by Jackson, saying that he would give $25 an acre and no more. This was immediately refused by Tighe. Tighe also withdrew his offer to take the Bada land at the proposed price. Bada thereupon ceased all negotiations with May and Jackson and undertook to make a deal through the agency of Ord. The following testimony of Ord will indicate the situation thus created:

"I first talked with Mr. May in reference to the Tighe ranch two years ago this fall (1911). The last talk I had with Mr. May about any prospective sale of the Tighe ranch was about August 16th, in Hastings, Iowa. I can't state exactly what was said then; we were talking about taking Bada out, and I told him if I could see the 519 acre tract of Mr. Bada, I could tell whether it would suit Mr. Tighe. One night I was passing Mr. May's place and he came out and asked me if the Tighe ranch had been sold; he didn't know

Mr. Tighe at all; I told him it hadn't that I knew of; he said, 'I have 519 acres that belongs to a fellow in Silver City,' and he told me all about it and I told him about the ranch. I had talked to and told him about the Tighe ranch a year before, and who owned it. He said he had the Bada 519 acres north of the Bluffs that he would trade for a ranch, and said he was getting $519.00 cash commission; I told him if I could get a trade with Mr. Tighe on this ranch I would get $3,120.00, and after we talked it over, the commission was to be divided equally. The next time I saw him was after he and Mr. Bada came back from Nebraska. I said, 'Bob, let's take Bada up next week and show him this Tighe ranch.' He said, 'We have just got back from there.' I said, 'That is a nice way to use me. That sale don't need to go. I will break that sale.' He said, 'Don't do it'; and I said, 'May, don't you do it.' He replied, 'Then I won't.' In that conversation he said he wasn't getting any commission from Mr. Bada. He said what commission he was getting was from Mr. Tighe, and by the time he cut it up with Mr. Jackson there would be nothing left. I next saw him in O'Neill, Nebraska. After that, and for over a year previous, I had been trying to sell the Tighe ranch in connection with J. J. Harrington. About two weeks after my talk with Mr. May, I saw Mr. Bada in Silver City and made him a proposition for the purchase of the Tighe ranch; and he told me he wouldn't give over $25.00 an acre.''

The plan conceived by Ord was that he took from Bada a written offer of $25 an acre and then undertook to persuade Tighe to accept the same. This was rejected by Tighe. These negotiations, however, were continued until Tighe did agree to accept $27.25 an acre for the land and a contract was entered into on that basis. Because of such sale to Bada, the plaintiff claims to recover upon his contract. It will be noted that the contract sued on provided for a commission only in

1. BROKERS: compliance with contract as condition to commission.

case a purchaser were produced who should purchase at $30 per acre. None such was in fact produced. It may be conceded that if Bada had been ready, willing, and able to pay $30 per acre, the plaintiff could not be defeated in his commission by any subterfuge on the part of Tighe in accepting changed terms or a reduced price. The testimony, however, is clear and undisputed that at no time was Bada ready and willing to pay $30 per acre; and he would not have paid more than $27.25. Tighe paid a commission of $2,000 to Ord and Harrington. There is no evidence of fraud or subterfuge on the part of Tighe. He yielded his price upon the importunity of Ord, reluctantly. Bada was evidently able to take care of himself. Plaintiff's brief says of Bada that if he were offered the "Garden of Eden" or the "New Jerusalem", he would find some objection thereto for the purpose of reducing the price. In order to trade at all, he required Tighe to take, at a valuation of $1,000, a second-hand, two-cylinder, 1901 model Buick automobile, "and a jackass". This was duress of a rare order. But these items were taken by Ord as his commission.

The only sign of any bad faith in the transaction was the "double-crossing" of each other by the agents. The plaintiff seems to have understood such art, and was the first to resort to it. He thereby overlooked the old Scripture philosophy—"The first shall be last". This was the real missile that struck him. As a result of war and reprisal between the agents, the commission was reduced to the wreckage indicated by the above inventory; and Bada gained all the resulting advantage.

It was argued that because Tighe ultimately availed himself of May's customer, he thereby became liable for the commission. This argument ignores the contract. Bada was not originally produced as a customer in pursuance of this contract. He was already a prospective customer for a trade before the contract was entered into. May and Jackson were with him as his own agents. If the contract can be deemed to

apply to Bada at all, it must apply to him not as a mere "purchaser found" but as a purchaser found *ready and willing to pay $30 per acre.* In the sense that he was a willing purchaser at some price, Tighe was already in touch with him and had a right to continue his negotiations with him without any liability for commission to May. His liability for commission arose under the contract, if at all, and in no other manner. Inasmuch as Tighe was wholly unable to sell to Bada for $30 per acre, and inasmuch as May and Jackson submitted no higher offer from Bada than $25 per acre, and inasmuch as Tighe afterwards sold in good faith at the reduced price of $27.25 an acre, there was no breach of the contract by Tighe and no performance thereof by May.

It is urged, however, by the plaintiff that there is a particular clause in the contract under which he is entitled to recover, which is as follows: "If I sell to any person who becomes interested through the efforts of the said Robert May, then I agree to pay the same commission to him as above stipulated." It is urged that under this clause the plaintiff

2. BROKERS: contract for commission: construction: interlocking clauses.

was not bound to find a purchaser at $30 per acre. If this sentence could be separated from the rest of the contract and made to stand alone as an independent contract, it might furnish ground for the contention. But it is a part of the contract and the contract must be construed in its entirety; its essential conditions permeate every part of it. In view of the circumstances already related, it may well be doubted whether this clause could be construed as referring at all to Bada, whose relations to the proposed purchase or trade had already attached. We reach the conclusion, therefore, that a verdict should have been directed for the defendant instead of for the plaintiff. This conclusion becomes decisive, also, of plaintiff's appeal from the order directing a verdict for the defendant Margaret. The judgment entered for the plaintiff against the defendant Edward Tighe will, therefore, be re-

versed, and the judgment of dismissal in favor of Margaret Tighe as against the plaintiff will be—*Affirmed*.

On plaintiff's appeal *Affirmed;* on defendant's appeal *Reversed*.

DEEMER, C. J., PRESTON and SALINGER, JJ., concur.